**ALUMINIOS POZUELO LTD., Plaintiff-Appellant,**

v.

**S. S. NAVIGATOR, her engines, boilers, etc., and Cia Mar. Unidad S. A. and Marina Mercante Nicaraguense S. A., Defendants-Appellees.**

No. 20, Docket 32182.

United States Court of Appeals Second Circuit.

Argued Sept. 16, 1968.

Decided Dec. 6, 1968.

Klein v. United States, 375 F.2d 825, 179 Ct.Cl. 910 (1967), cert. denied, 389 U.S. 1037, 88 S.Ct. 770, 19 L.Ed.2d 824 (1968).

Martin B. Mulroy, New York City (Hill, Rivkins, Warburton, McGowan & Carey, New York City), for plaintiff-appellant.

John S. Rogers, New York City (Burlingham Underwood Wright White & Lord, New York City), for defendant-appellee, Cia Mar. Unidad S.A.

Michael J. Ryan, New York City (Cichanowicz & Callan, New York City), for defendant-appellee, Marina Mercante Nicaraguense S.A.

Before LUMBARD, Chief Judge, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge:

Aluminios Pozuelo Ltd. (Aluminios), the plaintiff, appeals from an order granting summary judgment in favor of plaintiff to the extent of $500, thus limiting liability to this amount, against the defendants Cia Mar. Unidad S.A., owner of the S.S. NAVIGATOR, and Marina Mercante Nicaraguense S.A., the charterer of the vessel, in an action for damage to a machine shipped by Aluminios on the NAVIGATOR, D.C., 277 F. Supp. 1008.

The facts are stipulated. Aluminios shipped on defendants' ship a toggle press weighing over 3 tons. The press was some 11 feet in height, 55 x 46 inches at its base, and 98 x 67 inches at its top. It was bolted to a skid, consisting of two parallel pieces of lumber 130 inches in length with 3 cross pieces 96 inches in length. The Bill of Lading described the press under the headings "No. OF PKGS" and "SHIPPER'S DESCRIPTION OF PACKAGES AND GOODS" as ONE (1) SKID MACHINERY—2812 (GROSS WEIGHT IN KILOS)—6200 (GROSS WEIGHT IN POUNDS)." The press was delivered to the carrier in perfect condition, but after shipment was discovered to have become a total loss. The machine was valued at nearly four thousand dollars.

The defendants admit responsibility for the damage but maintain that their liability is limited to $500 by the provision limiting liability in Section 4(5) of the Carriage of Goods by Sea Act (herein referred to as COGSA). Whether Aluminios' recovery is limited to $500 depends on whether the skidded toggle press is a "package" or a "cus-

tomary freight unit" as specified in Section 4(5) of the Act.

### Section 4(5) of COGSA

The statute provides:

Neither the carrier nor the ship shall * * * be liable for any damage * * * to goods in an amount exceeding $500 per package * * * or in case of goods not shipped in packages, per customary freight unit, * * * unless the nature and value of the goods have been declared by the shipper before shipment and inserted in the bill of lading. 46 U.S.C. § 1304 (5).

In short, if the cargo damaged is a "package," the maximum liability of the carrier is $500, unless the shipper makes the carrier its insurer by specifying beforehand in the bill of lading the nature and value of the item being shipped. Where the goods damaged are "not shipped in packages" and where no specification of value is made as required, the carrier's liability is limited on the basis of $500 per "customary freight unit."

Unfortunately, no definition of "package" or "customary freight unit" is included in the statute. Due to the absence of any guides either in the statute or in the legislative history as to these terms, the decisions reveal little consistency. See Mitsubishi International Corp. v. S.S. Palmetto State, 311 F.2d 382, 94 A.L.R.2d 1412 (2nd Cir. 1962). While the number of cases has increased in recent years, surprisingly there is still a relative dearth of decided cases in this field, and those which do exist often are conflicting. Despite this evident lack of clarity and although we have reiterated the desirability of clarifying the situation, Congress has not yet formulated a definition, nor has the Court been offered any suggestions from outside. In the absence of any assistance, the Court must struggle with the cases as they arise.

Black's Law Dictionary (4th ed. 1951) defines "package" as a "bundle put up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery from hand to hand." It denotes "a thing in form suitable for transportation or handling." As ordinarily understood in the commercial world, it means a shipping package or unit.

The term "package" was first considered by courts, in the context of a statute limiting a carrier's liability, at least as far back as 1874 when Whaite v. Lancashire & Yorkshire Rlwy. Co., L.R. 9 Ex. 67, held that a four-wheeled wooden wagon without a top in which oil paintings were packed was a "package or parcel" and, hence, limited the shipper to a maximum recovery of £10 per package.

Since that date, the decisions have presented no reliable guide as to what constitutes a package, although more recently the "put up for transportation" aspect has been emphasized. Thus, in Standard Electrica, S.A. v. Hamburg Sudamerikanische, etc., 375 F.2d 943 (2 Cir., 1967), we held that fifty-four cardboard cartons, each containing forty TV tuners, strapped to nine separate pallets, formed nine, and not fifty-four, packages because each pallet constituted an integrated unit, capable of and intended for handling. There is no need to repeat the discussion therein of the technological advances in the transportation industry, particularly with reference to cargo being shipped in palletized or containerized form. When hundreds of items can be shipped in a single container which, in turn, can be loaded as a unit on board a vessel, it is obvious that the "package" as a descriptive term, is quite out-moded and utterly meaningless. In Standard Electrica, supra, we said (p. 947):

"Only if 'package' is given a more predictable meaning, will the parties concerned know when there is a need to place the risk of additional loss on one or the other accordingly or adequately to insure against it."

Yet to date no standards which might define a package have been forthcoming. Size (cubic feet) or weight might be the basis—at least for freight rates. The Post Office Department seems to have had no difficulty in using these measures for its parcel post packages.

A brief glance at some of the available decisions illustrates the confusion. Where goods are shipped without any packaging preparation, such items are not "packages" as specified in Section 4 (5). Stirnimann v. The San Diego, 148 F.2d 141 (2nd Cir. 1945) [106 uncrated pieces of a giant amusement crane]; The Bill, 145 F.2d 470 (4th Cir. 1945) [oil shipped in bulk in two deep tanks of a vessel]; Waterman S.S. Corp. v. United States Smelting and Mining Co., 155 F.2d 687 (5th Cir. 1946) [698 pieces of structural steel shipped without any packaging]; Middle East Agency v. The John B. Waterman, 86 F.Supp. 487 (S.D. N.Y.1949) [a large piece of a rock crusher shipped without any packaging]; Petition of Isbrandtsen Co., 201 F.2d 281 (2nd Cir. 1953) [ten locomotives and tenders]; India Supply Mission v. S.S. Overseas Joyce, 246 F.Supp. 536 (S.D.N.Y.1965) [six locomotives]; Caterpillar Americas Co. v. S.S. Sea Roads, 231 F.Supp. 647 (S.D.Fla.1964) [a tractor in a "loose" condition—uncrated and unboxed]; Freedman & Slater, Inc. v. M. V. Tofevo, 222 F.Supp. 964 (S.D.N.Y.1963) [one hundred Goggomobiles].

Correspondingly, regardless of size, where cargo is fully crated or boxed, reported cases have held that the items are "packages" within the meaning of COGSA. Stirnimann, supra [twenty boxed pieces of a giant amusement crane]; Middle East Agency, supra [fifteen crated pieces of a rock crusher]; Deere & Co. v. Mississippi Shipping Co., 170 F.Supp. 479 (E.D.La.1959) [a fully boxed tractor]; Mitsubishi International, supra [three fully boxed rolls of steel weighing 32½ tons each]. In holding that the $500 limitation is inapplicable to a negligent stevedore employed by the carrier to unload cargo, the Supreme Court implicitly indicated that a fully crated press weighing 19 tons is a "package." Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed. 2d 820 (1959).

Difficulties have arisen only in the few cases where the items shipped are partially packaged, and the cases have gone both ways. Gulf Italia Co. v. American Export Lines, 263 F.2d 135 (2d Cir. 1959) [partially crated tractor was not a package]; Pannell v. United States Lines Co., 263 F.2d 497 (2nd Cir. 1959) [While COGSA was held inapplicable, the Court implied that a yacht shipped on deck in a wooden cradle was not a package]; Middle East Agency, supra [five pieces of a rock crusher resting on skids were held to be five packages].

The meaning of "package" which has evolved from the cases can therefore be said to define a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods.

Aluminios asserts that the *Middle East Agency* case, the only reported case involving machinery attached to skids, has been overruled by the later decision in *Gulf Italia*. The opinion in *Gulf Italia* made no mention of the *Middle East Agency* decision, and it may well have to fall within the category of the irreconcilables.

The skid attached to the toggle press shipped by Aluminios, while to some extent protecting the machine, served primarily to facilitate delivery so as to make the press an article "put up * * * in a form suitable for transportation or handling." We conclude then that the skidded toggle press is a "package" as specified in Section 4(5) of COGSA.

If shippers find the $500 per package limitation outdated because of inflationary trends and technological developments, the statute provides that they can

obtain at their option full coverage merely by declaring the nature and value of the goods in the bill of lading and, where necessary, by paying a higher tariff. On the other hand, if they are reluctant to pay the higher charge and chose instead to gamble on safe delivery, they cannot argue later that the statute is inequitable. Moreover, any revision must come from Congress and not from the Court. Standard Electrica, supra, 375 F.2d pp. 946–947.

■ Aluminios argues that to hold against it for failure to declare the true value of its cargo before shipment is avoiding the real question of how to construe the term "package." Aluminios contends it did not make a declaration of value since it believed its toggle press was not a package and that adequate protection was therefore available under the $500 per "customary freight unit" limitation. In an endeavor to sustain this position, Aluminios relies on the manner in which the freight charges were calculated, namely, by attributing a size of 537 cubic feet to the press and then applying a charge of $38 per 40 cubic feet. But there is nothing in the Bill of Lading or in the statute that justifies the assumption that 40 cubic feet constitute a "customary freight unit." The parties could select this method for fixing the freight charges but there was no proof that such a cubic area was a "customary" unit to each of which units the $500 limitation was applicable. It would be highly artificial to attribute to the press as would Aluminios, 13.4 units of 40 cubic feet each and allow $500 to each unit or a ceiling on liability of $6,700 in order to cover the $3,754 loss.

The weakness of the Aluminios argument is that Middle East Agency, apparently the only other case involving skidded machinery, was on the books for nearly 20 years and held, as noted, that skidded cargo is a "package." It cannot reasonably be supposed then that Aluminios acted in reliance on what it believed to be adequate statutory protection. In fact, quite the contrary is true. While the ordinary layman would not define a skidded piece of machinery as a package, carriers and cargo interests, because of Middle East Agency and other cases, have had good reason to conclude that it is. Furthermore, in this field where certainty is so significant, only when the meaning of package is predictable will the parties concerned know when there is a need to place the risk of additional loss on one or the other accordingly.[1]

■■ In summary, where the term "package" for maritime shipping purposes has become a word of art and where by statute liability limitation consequences attach thereto, the parties must be presumed to have understood these consequences when they applied it to this Brobdingnagian package, the three-ton press. Their contract states their agreement. Having specified that the press was "ONE (1)" package, they must abide by its meaning as a word of liability limitation.

For the reasons stated, we hold that the skidded toggle press is a "package" as specified in Section 4(5) of COGSA, and that liability was properly limited to $500.

The order and judgment of the District Court are affirmed.

1. Report of the Spring Meeting of The Maritime Law. Association of the United States (May 3, 1968).

There was discussion of whether "a container or other means of consolidating packages or units, such as a pallet or flat, should be considered a single unit for limitation purposes under the Hague Rules as they presently exist." There was also discussion "as to whether or not a container should be treated as a package or unit in the Protocol." The new Protocol, apparently subject to ratification or legislative enactment, fixed liability limits of $662 per package or $.90 per pound, subject however to specification of the number of packages or units in the Bill of Lading. The Committee recommended with certain exceptions that the Association "urge the United States Government to give the Amendments the force of law by enactment of domestic legislation and by ratification of the Visby Protocol."