**HARTFORD FIRE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**PACIFIC FAR EAST LINE, INC., a corporation, et al., Defendants.**

No. 49505.

United States District Court,
N. D. California.

Nov. 19, 1970.

Interlocutory Judgment Dec. 11, 1970.

John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiff.

Harvey I. Wittenberg, George L. Waddell, Dorr, Cooper & Hays, San Francisco, Cal., for defendants.

## OPINION OF THE COURT

SCHNACKE, District Judge.

The sole question before the Court at this stage of these proceedings is whether the liability of defendant carrier for alleged damage to certain cargo shipped by plaintiff's subrogor, which cargo is hereinafter more fully described, is limited to $500, by virtue of Section 4(5), 46 U.S.C., Sec. 1304(5), of the Carriage of Goods by Sea Act, commonly referred to as COGSA. The parties are in agreement that this depends upon whether the cargo was a "package" within the meaning of Section 4(5).[1] A separate trial of this issue was ordered by this Court, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure and was duly held.

The facts relevant to this issue are not in dispute. The shipment was of an electrical transformer which was at all pertinent times mounted on and bolted to a skid of heavy timbers.[2] The transformer was 13 feet, 1 inch high, 11 feet, 7 inches long and 7 feet, 8 inches wide, weighing some 36,700 pounds. Along with other items separately itemized, the transformer in question was shipped on an ocean bill of lading prepared by a licensed freight forwarder employed by the shipper. The bill of lading, under the heading "No. of Pkgs.", contains the entry "#1". Under the heading "De-

---

1. The alternative provision of Section 4(5), referring to "customary freight unit", was not briefed or argued, and no evidence was adduced with respect thereto.

2. Some mention is made in certain of the cases of whether the skids were attached or the cargo palletized by the shipper for purposes of protection of the cargo or for convenience in handling and delivery, e. g., Standard Electrica, S. A. v. Hamburg Sudamerikanische, Etc., 375 F.

2d 943, 946 (2nd Cir. 1967), certiorari denied, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed. 2d 89 (palletized cargo),; Aluminios Pozuelo Ltd. v. S. S. Navigator, infra, 407 F.2d at p. 155, and plaintiff urges this as a distinction to be considered in this case. No case, however, appears to have been decided upon this ground alone. Doubtless skidding or palletizing serves various purposes, and the alleged distinction does not commend itself to the Court.

scription of Packages and Goods", it contains the entry "* SKID ELECTRIC TRANSFORMER" followed by some numerals, possibly a serial number, not here pertinent.[3]

Upon arrival at its destination, the transformer was allegedly damaged in an amount in excess of $500, and plaintiff seeks recovery for the full amount of the damage, or in any event, some sum in excess of $500.

In seeking recovery in excess of $500, the position of plaintiff is a frontal assault upon the decision of the Second Circuit in the leading case of Aluminios Pozuelo Ltd. v. S. S. Navigator, 407 F.2d 152 (1968). No distinction between the present case and *Aluminios Pozuelo* is suggested, and none appears tenable. There a toggle press, of weight and size similar to the transformer here involved, and skidded in a similar fashion, was held to constitute a single "package" within the meaning of Section 4(5). The prior authorities are extensively collected and reviewed in *Aluminios Pozuelo* and the cases cited therein, and no useful purpose would be served by reviewing them here. As the court there points out, it has been held for over 20 years, since Middle East Agency v. The John B. Waterman, 86 F.Supp. 487 (S. D.N.Y.1949), that a piece of skidded cargo, regardless of size, weight or value, constitutes a "package" for purposes of Section 4(5), in view of the absence of any contrary definition in the statute, and that the term has therefore become a "word of art" (407 F.2d, at p. 156) familiar to shippers and carriers alike. If a contrary definition is desired, or if the $500 limit is unrealistic or unfair to shippers, resort may, of course, be had to Congress.

When a shipper desires to ship cargo more valuable than $500 per "package" (as "package" has been defined by the courts)[4], it has three clear alternatives: (1) it may content itself with the statutory limit of liability, (2) it may declare the excess value and pay the additional charges specified in the carrier's tariff, or (3) it may, as it has obviously done here, protect itself by taking out appropriate insurance. In the event the last of these alternatives is elected, the insurer will presumably fix its premium in light of the limited subrogation available to it under Section 4(5) and the "word of art" which "package" has become for purposes of that Section.

The law requires common carriers by sea to construct and file tariffs, which are subject to review as to reasonableness by the Federal Maritime Commission. The liabilities to which the carrier is exposed in its business are obviously elements to be considered in fixing the tariff rates. The clear purpose of Section 4(5) is to limit these liabilities in certain respects. Imperfect as this subsection may be in various respects, to hold for plaintiff in this case would be contrary to the long-standing construction of the statute by the courts. This the Court is not inclined to do.

Accordingly, it is found that the skidded transformer above described was a "package" within the meaning of Section 4(5) and that the liability of the carrier is limited in accordance with the provisions of that Section.

Defendant has lodged proposed findings of fact, conclusions of law and interlocutory judgment consistent with this opinion, with proof of service upon counsel for plaintiff, pursuant to Rule

---

3. There is no question but that the bill of lading was issued pursuant to, or that the shipment was subject to, COGSA. Both the bill of lading and defendant's tariff expressly so provided. Defendant's tariff also contains a provision for additional freight rates applicable to cargo declared to be valuable. The reason-

ableness of this tariff is not before the Court.

4. Obviously, the value of cargo is better known to the shipper than to the carrier, regardless of whether the method of packaging exposes or conceals the nature of the cargo.

123(a) of this Court. Plaintiff shall have 5 days following the filing of this opinion to serve and lodge a notice of disapproval, together with proposed modifications and reasons therefor, as provided in Rule 123(c), but in conformity with the views herein expressed.

It is so ordered.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, and INTERLOCUTORY JUDGMENT

This case having come on regularly for trial on the 5th day of November, 1970, before the Honorable Robert H. Schnacke, Judge of the United States District Court for the Northern District of California, on the separate issue of whether defendant is entitled to limit its liability to $500 pursuant to the provisions of 46 U.S.C. § 1304(5), such separate trial having been ordered by the Honorable Alfonso J. Zirpoli March 10, 1969, John E. Droeger, Esq. appearing as counsel for plaintiff and Harvey I. Wittenberg, Esq. appearing as counsel for defendant; and the Court having heard the arguments of counsel and read the briefs, and having examined and considered the Stipulations of Fact and the documents and depositions admitted in evidence, there being no oral testimony, and the case having been submitted for decision, the Court makes the following Findings of Fact:

## FINDINGS OF FACT

1. At some time prior to September 30, 1966, Black Construction Company ordered a 10,000 KV transformer from General Electric Company to be shipped from Rome, Georgia for installation in Agana, Guam.

2. Prior to shipment by General Electric Company from Rome, Georgia the transformer was mounted on and bolted to a skid made of heavy timbers, on which it was intended to and did remain securely fastened, forming a single unit, throughout the entire transit from Rome, Georgia to San Francisco by flatcar and from San Francisco to Agana, Guam by defendant's vessel the SS PACIFIC BEAR.

3. The skidded transformer had the following physical characteristics:

Height: 13 ft. 1 inch
Length: 11 ft. 7 inches
Width: 7 ft. 8 inches
Weight: 36,700 pounds

4. Certain parts and appurtenances of the transformer were separately packaged, viz., certain of its radiators were shipped on a skid, other radiators were shipped in a crate and certain high-voltage bushings were shipped in a case. In addition, certain related articles and supplies accompanied the transformer, so that the entire consignment consisted of the skidded transformer, the skidded radiators, the case of high-voltage bushings, a carton of transformer parts, a case of transformer radiators, a skidded gas cylinder, and 39 drums of petroleum oil.

5. For the purpose of arranging the ocean transportation from San Francisco to Guam, Black Construction Company employed B. H. Loveless & Co., a freight forwarder licensed by the Federal Maritime Commission since 1961, who actually prepared the ocean bill of lading subsequently executed by defendant, including typing in the typewritten portions thereof, and who could have declared but did not declare on said bill of lading a value for said transformer in excess of $500.

6. Said ocean bill of lading prepared by B. H. Loveless & Co. and issued by defendant decribes the skidded transformer as follows:

| No. of Pkgs. | Description of Packages & Goods |
| --- | --- |
| 1 | * Skid electric transformer" |

The underlined words are part of the printed form of bill of lading.

7. Upon discharge from the SS PACIFIC BEAR at Agana, Guam, the skidded transformer was found to have sustained damage to one of its low-voltage bushings.

8. Such damage was inspected and repaired by persons employed by Black Construction Company, which was reimbursed by plaintiff for the cost thereof, an amount alleged to be in excess of $500.

9. The transformer was designed and manufactured for outdoor installation, and after removal of the skid it was permanently installed outdoors in Guam.

10. The ocean bill of lading issued by defendant Pacific Far East Line, Inc. provides that it shall have effect subject to the provisions of the Carriage of Goods by Sea Act (46 U.S.C. §§ 1300–1315).

11. The skidded transformer was carried by Pacific Far East Line, Inc. pursuant to its then current Guam freight tariff, which provided in part:

"RULE CARRIER'S LIABILITY: No. 5

"The liability of the Carrier as to the value of shipment at the rates herein provided shall be determined in accordance with the clauses of the Carrier's regular bill of lading form. If the Shipper desires to be covered for a valuation in excess of that allowed by the Carrier's regular bill of lading form, the Shipper must so stipulate in Carrier's bills of lading covering such shipments and such additional liability only will be assumed by the Carrier at the request of Shipper and upon payment of additional charge in accordance with Item 2171 of this tariff of the total declared valuation in addition to the stipulated rates applying on the commodities shipped as specified."

12. The skidded transformer is a package within the meaning of Section 4(5) of the Carriage of Goods by Sea Act (46 U.S.C. § 1304(5)).

13. Any other facts stipulated are found to be as stipulated.

The following conclusion of law, insofar as it may be considered a finding of fact, is also found by this Court to be true:

## CONCLUSION OF LAW

Defendant Pacific Far East Line, Inc. is entitled to limit its liability for damage to the transformer referred to in the complaint to $500.

## INTERLOCUTORY JUDGMENT

In accordance with the foregoing findings of fact and conclusion of law, it is hereby ordered, adjudged and decreed as follows:

1. Defendant's liability for damage to the transformer referred to in the complaint is and it shall be limited to the sum of $500.

2. If the case shall not have been settled and a dismissal filed within 60 days, it shall be placed on the civil trial calendar for trial on the remaining issues.