ALLSTATE INSURANCE COMPANY, a corporation and Delta Overseas, Inc., a corporation, Plaintiffs-Appellants,

v.

INVERSIONES NAVIERAS IMPARCA, C.A., d/b/a Imparca Lines, a foreign corporation and the M/V "Tamanaco", its engines, tackle, appurtenances, etc., in Rem., Defendants-Appellees.

No. 80–5071.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 26, 1981.

Richard R. McCormack, Miami, Fla., for plaintiffs-appellants.

Gerhardt A. Schreiber, Miami, Fla., for defendants-appellees.

Before JONES, HILL and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Once again we are called upon "to determine what Congress would have thought about a subject about which it never thought or could have thought and one about which we have never thought . . . . Technology has created a maritime transportation system unlike any which was in existence in 1936 when Congress enacted" the Carriage of Goods by Sea Act ("COG-SA"). *Wirth Ltd. v. S/S Acadia Forest*, 537 F.2d 1272, 1276 (5th Cir. 1976). Specifically, we must decide what is a "package" as defined in section 4(5), 46 U.S.C.A. § 1304(5) (1975), which limits a carrier's liability to the shipper for lost or damaged goods to $500 per package. The goods in question which were lost or stolen during shipment consisted of a number of cartons of electronic goods valued at $33,560, which were shipped in a 20-foot cargo container. The district court concluded that the entire container was the package for purposes of the limitation of liability clause and entered judgment for $500 in favor of the shipper. We reverse.

## FACTS

The facts are not in dispute. Delta Overseas, Inc. ("Delta" or "shipper") is an import-export company specializing in electronic goods. One of its customers was Celta Electronics, S.A. ("Celta"), a Venezuelan company, which in July, 1977, ordered a quantity of stereo receivers and digital clock radios. Delta obtained a 20-foot container from Farovi Shipping Corporation, an agent for appellee Inversiones Navieras Imparca, C.A., d/b/a Imparca Lines ("Imparca" or "carrier"). The evidence shows that the container belonged to Imparca. The container was loaded at Delta's warehouse by Delta's employees with 100 stereo receivers in individual cartons and numerous digital clock radios packaged, on average, six to a carton, totaling 241 cartons. The total number of cartons placed in the container was 341. The container was sealed by Delta and delivered to Imparca by Delta's agent, Sunshine Cartage Corp. The container was placed upon Imparca's vessel the M/V TAMANACO in September, 1977. Imparca issued a bill of lading for the container which described the cargo as "One 20′ Ft. Container With 341 Cartons," and as "One 20′ Container said to contain electronic equipment radio apparatus."

Upon arrival in Venezuela, the container was discovered to have been opened and all 100 stereo cartons and 102 of the clock radio cartons were missing. Appellant Allstate Insurance Company ("Allstate") paid Delta for the loss and obtained an assignment of its rights against Imparca. Allstate filed this suit in admiralty to recover the value of the missing goods. The district court determined that Imparca was liable for the loss; Imparca does not appeal from this ruling. The district court also found that the value of the goods was $33,560 plus $1,606 in prorated freight, storage, insurance and miscellaneous expenses or a total loss of $35,166. This finding is also unchallenged on appeal. However, the district court concluded that the entire container was the appropriate "package" for the purpose of the $500 limitation of liability contained in COGSA and entered a judgment in favor of Allstate for only $500.

## DISCUSSION

Section 4(5) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5) (1975), provides in part:

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of the that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

This limitation was enacted in light of the superior bargaining power which the carrier has over the shipper. The apparent purpose of the provision "was to set a reasonable figure below which the carrier should not be permitted to limit his liability." *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 815 (2d Cir. 1971). *See also Shinko Boeki Co. v. S.S. "Pioneer Moon",* 507 F.2d 342 (2d Cir. 1974).

The advent of the containerized cargo method of transporting goods has created problems not envisioned by the framers of COGSA. The "containers are large metal boxes resembling truck trailers save for the absence of wheels, roughly 8′ high, 8′ wide and with lengths up to 40′ . . . capable of carrying hundreds of packages in the normal sense of that term." *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807, 816 (2d Cir. 1981). Obviously, a container of this size, even when loaded with inexpensive goods, would far exceed the $500 limitation in value in virtually every case.

This court has not addressed the issue whether a container is the appropriate "package" for purposes of the limitation of carriers' liability; however, other courts, notably the Second Circuit Court of Appeals, have faced the question. The first case was *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971). In *Leather's Best,* the carrier furnished the seller with a 40-foot container which the seller loaded with 99 cartons or bales of leather. The container was then sealed by the seller and was placed upon the Mormaclynx for shipment from Germany to New York. The carrier's agent issued a bill of lading which described the cargo as "1 container s.t.c. [said to contain] 99 bales of leather." Upon arrival in New York, the container was stolen and the goods never recovered. On the issue of the proper "package" for purposes of the limitation of liability, the court held:

[W]e cannot escape the belief that the purpose of § 4(5) of COGSA was to set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the carrier caused them to be "contained."

451 F.2d at 815 (footnote omitted).

Subsequent to the *Leather's Best* decision, the Second Circuit expounded on the question and developed the so-called "functional economic" test for determining the appropriate package. *See Cameco, Inc. v. S.S. American Legion,* 514 F.2d 1291 (2d Cir. 1974); *Royal Typewriter Co., Division of Litton Business Systems, Inc. v. M/V Kulmerland,* 483 F.2d 645 (2d Cir. 1973). As explained in *Matsushita Electric Corporation of America v. S.S. Aegis Spirit,* 414 F.Supp. 894 (W.D.Wash.1976), the "functional economic" test:

[D]eemed the shipper's own carton or crate, rather than the container, a presumptive "COGSA package" if the carton or crate incorporates packaging sturdy

enough to withstand the rigors of break bulk carriage. If the shipper's package meets this test, it is deemed to be what the Court called a "functional package." If, however, the Court finds the cargo, as packaged by the shipper, unsuited to break bulk carriage, a contrary presumption obtains—that is, the container itself becomes the presumptive COGSA package. In either case the presumption can be rebutted by evidence of an intention by the contracting parties to treat as a COGSA package something other than the presumptive package.

414 F.Supp. at 902 (footnote omitted).

The functional economic test was subject to severe criticism from all corners and has finally been abandoned by the Second Circuit on the ground that the test was inconsistent with its prior *Leather's Best* decision. *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807 (2d Cir. 1981). The court stated:

> While we left open the possibility that there might be some instances where a container might be the package, e. g., when the shipping documents, . . . gave the carrier no information as to the contents, . . . the clear holding of the opinion, as the lower courts and commentators recognized, . . . was that at least when what would ordinarily be considered packages are shipped in a container supplied by the carrier and the number of such units is disclosed in the shipping documents, each of those units and not the container constitutes the "package" referred to in § 4(5).

At 817 (citations omitted). At least one other court has endorsed and applied the *Leather's Best* holding, *Matsushita Electric*

*Corporation of America v. S.S. Aegis Spirit*, 414 F.Supp. 894 (W.D.Wash.1976), and another district court has reached a similar conclusion with respect to containerized cargo. *See Yeramex International v. S.S. Tendo*, 1977 A.M.C. 1807 (E.D.Va.), *rev'd. on other grounds*, 595 F.2d 943 (4th Cir. 1979). *See also In re Norfolk, Baltimore & Carolina Line, Inc.*, 478 F.Supp. 383 (E.D.Va. 1979). One district court within this circuit reached the same conclusion before the *Leather's Best* decision. *Inter-American Foods, Inc. v. Coordinated Caribbean Transport, Inc.*, 313 F.Supp. 1334 (S.D.Fla.1970).

Judge Friendly dealt comprehensively and persuasively with this problem in *Mitsui & Co. v. American Export Lines, Inc.*, *supra*, which followed and elaborated upon his decision in *Leather's Best, Inc. v. S.S. Mormaclynx, supra*. We follow the holding and reasoning in the two decisions by Judge Friendly.[1] The facts of the instant case fall squarely within the facts and holding of *Leather's Best* and one of the two decisions rendered in *Mitsui*,[2] and therefore we are not faced with any expansion of the Second Circuit rule, or any issue as to whether any particular factor is a necessary precondition for application of the rule. The instant facts, as in the Second Circuit cases include: the shipper first having placed the goods in packages (cartons in this case)—as used in the ordinary sense of the word—and then having loaded those packages in a container owned or furnished by the carrier, and the number of the packages within the container having been disclosed to the carrier in the bill of lading or otherwise. On such facts, we hold that each package or unit within the container constitutes one "pack-

---

1. As the court in *Leather's Best* recognized, "[t]he problem demands a solution better than the courts can afford. . . ." 451 F.2d at 814. However, we believe that the rule developed in *Mitsui* and *Leather's Best* is the best judicial solution, in the absence of a legislative solution.

2. The *Mitsui* case was actually two consolidated cases involving cargo lost from the same ship for the same causes. The first case involved a shipment of tin ingots which were placed in the container in "bundles" or stacks of 15 ingots. The court held that the "bundles"

could not be considered packages in the ordinary sense of the word because they were in no way bound together. The second case, involving Armstrong Cork Canada, Ltd., however, involved a shipment of rolls of floor covering material which were covered with paper and capped on each end by cardboard discs. The court held that each roll qualified as a package in the ordinary sense of the word. The facts of the case before us fall squarely within the facts and holding in the case involving Armstrong Cork.

age" for purposes of COGSA's $500 limitation of liability. Accordingly, we conclude that the district court erred in its conclusion that the container was the proper package for purposes of COGSA's limitations of liability.

None of the cartons contained goods worth more than $500; in fact, the value of the goods in any one carton was substantially less than $500. The district court found that the value of the goods in the missing cartons was $33,560 plus $1,606 in prorated expenses or $35,166. Neither party disputes this figure. Accordingly, we remand the matter to the district court for entry of judgment in favor of appellants in the amount of $35,166.

REVERSED AND REMANDED.