**SOLAR TURBINES INCORPORATED
and Solar Turbines International
Co., Plaintiffs,**

v.

**S.S. "AL SHIDADIAH", her engines, boilers, etc., and United Arab Shipping Company (S.A.G.), Defendants.**

**No. 83 Civ. 0305 (KTD).**

United States District Court,
S.D. New York.

Nov. 14, 1983.

Bigham, Englar, Jones & Houston, New York City, for plaintiffs; William R. Connor III, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant United Arab Shipping Co. (S.A.G.); Enrico S. Sanfilippo, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This is an admiralty action in which the plaintiffs, Solar Turbines, Inc. and Solar Turbines International Co. (hereinafter the singular "Solar Turbines") sue the defendants, S.S. "Al Shidadiah" and United Arab Shipping Co. ("UASC"), for damages to plaintiffs' generator unit incurred while it was being loaded on to the Al Shidadiah. Defendant UASC moves for partial summary judgment declaring that its liability is limited to $500.00. Defendant argues that the generator unit was one "package," and thus subject to the Carriage of Goods by Sea Act's ("COGSA's") $500.00 per package limitation. Plaintiff, on the other hand, asserts that the generator unit is not a "package." For the reasons that follow, defendant's motion to limit its liability to $500.00 is denied.

## BACKGROUND

Plaintiffs entered into an agreement with USAC to ship, *inter alia*, four generator units on Al Shidadiah from Houston, Texas to Damman, Saudi Arabia. The ultimate destination for the generators was Iraq. On December 23, 1981, while defendant's derrick was lifting one of plaintiffs' generators aboard the ship, the crane's wire apparently parted causing the derrick and plaintiffs' generator unit to swing into the hull. As a result, the generator unit allegedly required $42,450.29 in repairs.[1]

Plaintiffs' generator units were enclosed permanently in trailers throughout their useful life. The issue presented by this case is whether the trailer-contained generator unit constituted a "package" as defined by COGSA, thus making plaintiffs' claim subject to COGSA's $500.00 per package liability limitation. Defendant asserts that the May 10, 1983 deposition of plaintiff's Group Transportation Manager, Wardell Bailey, establishes the undisputed fact that the trailer-contained generator unit was a "package." Bailey, in his deposition testimony, discussed the purpose, function, and physical characteristics of the trailer and generator unit. He stated that the trailer, which resembles standard trailers used on highways, completely and permanently encloses the generator unit. The trailer's primary purpose is the increased mobility it provides, which is essential to the production of electricity in remote areas such as oil fields where there is no standard electrical power. The valuable mobility enables quick installation and expedient transfer of the generator to other areas because it is not attached to a concrete, steel, or other type base. In addition, the trailer provides protection against the desert elements and contains a fireproofing system.

## DISCUSSION

A. Bill of Lading Liability Limitation

■ Defendant raises a preliminary argument. He asserts that because the alleged damage occurred before loading, the conditions and terms of its bill of lading govern this dispute, and not COGSA section 1304.[2] 46 U.S.C. § 1302, however, explicitly extends the carriers' responsibilities, liabilities, rights and immunities set forth in sections 1303 and 1304 to "the loading, handling ... custody [and] care" of goods they have contracted to carry by sea. Section 1303(2) also expressly re-

---

1. After the generator unit was repaired in Houston it was shipped to Iraq on a different vessel. The other items and generator units were loaded and shipped on the Al Shidadiah without incident.

2. The bill of lading ostensibly restricts defendants' liability to $500.00. Section 1304 contains the language concerning "packages" at issue herein.

quires the carrier to "properly and carefully load, [and] handle ... the goods carried." Defendant argues that paragraph 1(a) of its bill of lading excludes liability for damage to goods caused before loading and after discharge. 46 U.S.C. § 1303(8), however, prohibits such contractual provisions because they are inconsistent with COGSA, and renders them "null and void and of no effect." Accordingly, COGSA applies to the instant dispute.

## B. COGSA Liability Limitation

Section 1304(5) provides that "[n]either the carrier nor the ship shall be or become liable for any loss or damage ... exceeding $500 per package ... or in case of goods not shipped in packages, per customary freight unit...." The statute, thus, "establishes a clear distinction between goods shipped in packages and 'goods not shipped in packages.'" *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, 813 (2d Cir.1981). Unfortunately, COGSA does not define "packages." Early admiralty cases established that "regardless of size, where cargo is fully crated or boxed ... the items are 'packages' within the meaning of COGSA.... Difficulties have arisen only in the few cases where the items shipped are partially packaged, and the cases have gone both ways." *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968).

The instant case presents a slightly different twist because the enclosure here does not clearly involve packaging as does a crate, metal box, or wooden skid. Recent cases also provide little insight because they generally involve issues created as a result of the "container revolution." *See Mitsui & Co.*, 636 F.2d at 815. The issue in these recent cases is whether the container, or the various crates or items inside the container, constitute the "packages." In discussing earlier cases, however, the *Mitsui & Co.* court noted that "[f]or many years the controversy over what was a package mainly concerned claims by carriers that large pieces of machinery, which admittedly would not be packages if shipped without some attachment, became such because of the affixing of protective covering for part of the machine or of skids or other devices useful in loading and unloading." *Id.*

It is indisputable that the trailer enclosing the generator units in the instant case is shipped without affixing any attachments. The trailer is part of the generator unit whether it is shipped by sea or not. To that extent it is very different from the skids and crates involved in the earlier cases. *See Aluminios Pozuelo*, 407 F.2d at 155 ("where goods are shipped without any packaging preparation, such items are not 'packages'"). The enclosure here, as Bailey stated in his deposition, is not preparation for shipping, but rather primarily, if not solely, part of the product itself: mobility for installation purposes, protection from the desert elements, and part of a fireproofing system. Factually similar cases provide support for this conclusion. *See, e.g., General Motors Corp. v. S.S. Mormacoak*, 327 F.Supp. 666 (S.D.N.Y.), *aff'd*, 451 F.2d 24 (2d Cir.1971) (generator enclosed in a metal housing and mounted on a steel base was not a "package"); *Isbrandtsen Co. v. United States*, 201 F.2d 281 (2d Cir.1953) (ten uncrated locomotives were not "packages"); *Middle East Agency, Inc. v. The John B. Waterman*, 86 F.Supp. 487 (S.D.N.Y.1949) (uncrated tractors were not "packages"); *see also Aluminios Pozuelo, supra* (three ton toggle press bolted to a wooden skid principally for shipping and handling purposes is a "package"); *Mitsubishi International Corp. v. S.S. Palmetto State*, 311 F.2d 382 (2d Cir.1962) (three 32½ ton steel rolls fully boxed in wooden cases are "packages"), *cert. denied*, 373 U.S. 922, 83 S.Ct. 1523, 10 L.Ed.2d 422 (1963).

■ Defendant argues that the parties' intent was that the trailer-contained generator unit would be treated as one "package." Certainly, the focus should be on the parties' intent. *Allied International American Eagle Trading Corp. v. S.S. "Yang Ming"*, 672 F.2d 1055, 1061 (2d Cir. 1982). The ambiguous indicia before me on

such intent, however, supports a conclusion opposite to that asserted by the defendant.

Defendant notes that on several delivery receipts—for the original shipment, the shipment for repairs, and the reshipment—under the headings "No. of Pkgs." the number "1" is inserted each time. Citing *Allied International,* defendant argues that this indicates the parties' understanding that the generator units would be considered one package. There are several defects in this argument. First, in *Allied International,* the bill of lading listed each of the items separately and then under the heading "No. of Containers or P'kgs." listed a total of "30 Packages." In addition, at the bottom of the bill of lading on a printed line that required the parties to fill in the "Total Number of Packages or Units (in words)" was typed "Thirty (30) Packages Only." The instant controversy presents far less clear evidence of the parties' intent. *See General Motors Corp. v. S.S. Mormacoak,* 327 F.Supp. at 668 ("The fact that the bill of lading stated that the 'No. of Pkgs.' was 3 is not conclusive."). Moreover, the *Allied International* court was concerned principally with the number of packages, not the preliminary issue whether any of the items could even constitute a package. *See* 672 F.2d at 1058 ("neither side disputes that the cargo was packages; the issue is whether the cartons or the pallets should be considered 'packages.' "). Thus, defendant's heavy reliance on *Allied International* is misplaced.

Furthermore, each receipt also contained additional language. The initial delivery receipt described the items as "Trailers Self Contained Generator Units." The repair pick-up order stated "Toway: Generator Units." The reshipment delivery order denoted "1 Trailer: Toway Generator Unit." Each document cited by defendant clearly states that a trailer-enclosed generator unit is being shipped, not a crate, container, or other packaged item. Thus, I find that the parties intended that the generator units would be shipped as explicitly identified and not as packages.

 In summary, then, I find that the documentary evidence of the parties' intent, and the precedential authority of earlier and factually similar cases, mandate the conclusion that plaintiffs' generator unit was a "good not shipped in packages." Therefore, $500.00 per customary freight unit, and not $500.00 per package is the correct liability limitation. Accordingly, defendant's motion for summary judgment is denied.

SO ORDERED.