The CRISPIN COMPANY, Plaintiff,

v.

M/V MORNING PARK, Her Engines, Tackle, Apparel, Etc. and Cho Yang Shipping Co., Ltd., Clover Trading Co., Nassau Navigation, Inc. and Valor Stevedoring Co., Defendants.

Civ. A. No. H–82–1707.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 27, 1984.

Judgment Amended May 11, 1984.

Sharpe & Kajander, A. Thomas Kajander, Houston, Tex., for plaintiff.

Royston, Rayzor, Vickery & Williams, Gus A. Schill, Haight, Gardner, Poor & Havens, Vidal Martinez, and Brown, Sims & Ayre, G. Byron Sims, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

STERLING, District Judge.

This case arises from the non-delivery of a cargo of steel pipe carried aboard the vessel M/V MORNING PARK from the Port of Puerto Cabello, Venezuela, to Houston, Texas, in June, 1981. Plaintiff seeks damages, prejudgment interest, interest on its total judgment, costs of court, and attorney's fees.

Defendants Nassau Navigation, Inc. and Valor Stevedoring have been dismissed from the case. Defendant Clover Trading Co. is presently in bankruptcy in Denmark and has not appeared or answered. Defendant Cho Yang Shipping Co., Ltd., owner of the M/V MORNING PARK, has appeared and denied Plaintiff's claim.[1] All relevant facts have been stipulated by the Plaintiff and Defendant Cho Yang, the latter admitting liability for the non-delivery of eight bundles of Plaintiff's cargo. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1333.

The only contested issue of law is that of damages under § 1304(5) of the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq.* If the missing steel pipe[2] was shipped in "packages" as defined by COGSA then Defendants' liability is limited to $4,000.00. If calculated by COGSA's "customary freight unit" limitation, then Plaintiff's damages total $7,492.00.

COGSA provides no definition of the term "package," and the legislative history is unhelpful. Decisions on this issue fall into two general groups. Those courts following the Second Circuit's approach adopt an expansive definition of the term "package" as "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has

---

1. The Marine Office of America Corporation has become subrogated to the named Plaintiff's rights and is now the real party in interest.

2. The bill of lading shows that fifty-two lifts of five pieces of pipe each were loaded at Puerto Cabello; the dock delivery receipts indicate that only forty-four lifts were unloaded at the Port of Houston. Each "lift" consisted of five pieces of 42-foot pipe strapped together by steel bands, but not otherwise boxed, crated or enclosed.

been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Ltd. v. S.S. NAVIGATOR, Et Al,* 407 F.2d 152, 155 (2nd Cir.1968). Other courts have adopted the Ninth Circuit's narrower view that a cargo is a "package" under COGSA only when the preparation of the goods for shipment conceals their identity. *Hartford Fire Insurance Co. v. Pacific Far East Line, Inc.,* 491 F.2d 960, 964 (9th Cir.1974), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974). While the Fifth Circuit apparently has not conclusively defined "package" in this context, it has stated clearly that cargo does not have to be fully enclosed to qualify as a package, *Calmaquip Engineering West Hemisphere Corporation v. West Coast Carriers, Ltd.,* 650 F.2d 633, 639 (5th Cir. 1981), and has identified itself more closely with the Second Circuit's approach. *Allstate Insurance Company v. Inversiones Navieras Imparca, C.A.,* 646 F.2d 169, 172 (5th Cir.1981); *Croft & Scully Co. v. M/V Skulptor Vuchetich,* 664 F.2d 1277, 1281 (5th ·Cir.1982).

▆ Black's defines "package" as

"[a] bundle put up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery from hand to hand. A parcel is a small package; 'parcel' being the diminutive of 'package.' Each of the words denotes a thing in form suitable for transportation or handling, or sale from hand to hand. As ordinarily understood in the commercial world, it means a shipping package."

Black's Law Dictionary 998 (5th ed. 1979). It is stipulated that the bundling of the pipes into lifts "facilitated the handling and

3. The bill of lading, in the column captioned "No. of Pkgs." says "Lifts 52." Dock delivery receipts issued in Houston list a total of "44" in the column labeled "No. Pkgs." and describe the cargo as "Bdls pipe." under the column headed "Commodity." None of the dock delivery receipts refers to the total number of pieces of pipe delivered; the bill of lading does.

4. At least in the situation where COGSA does not apply of its own force and effect, and is merely incorporated as a term of the bill of lading. *Croft & Scully, supra,* 664 F.2d at 1280 n. 7.
The Fifth Circuit in *Allstate Insurance Co., supra,* 646 F.2d at 172, expressly adopted the hold-

transportation of the pipe." Joint Stipulation of Facts No. 11. The documentation used in the transaction on balance indicates that each lift of pipe constituted a package.[3] Although the parties' characterization of the cargo cannot override the statutory definition, *Brown & Root, Inc. v. M/V PEISANDER,* 648 F.2d 415, 420 (5th Cir. 1981), *see also Gebr. Bellmer KG. v. Terminal Services Houston, Inc.,* 711 F.2d 622, 624 (5th Cir.1983), the Fifth Circuit permits an examination of documents which might indicate the intent and mutual understanding of the parties as to the meaning of the term "package." *Croft & Scully Co., supra,* 664 F.2d at 1281.[4] Finally, the Court notes that the bundled pipe has the common sense, visual appearance of a package, and concludes that each five-piece lift constituted a "package" as that term is employed in § 1304(5) of COGSA.[5]

It is therefore ORDERED that Plaintiff's damages total $4,000, plus costs of court and attorney's fees of $2,976.57 pursuant to TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–83). Plaintiff is entitled to prejudgment interest of 9%, said rate based on TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1982–83) and accruing from the date of delivery of the pipe, June 22, 1981. Postjudgment interest shall accrue at the applicable legal rate.

## ORDER

Attorney's fees were improvidently awarded in the Final Judgment previously entered in this admiralty suit based upon the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 *et seq. See Noritake Co., Inc. v. M/V HELLENIC CHAMPION,* 627 F.2d 724, 730 (5th Cir.1980); *Platoro Ltd., Inc. v. Unidentified Remains, Etc.,* 695 F.2d 893, 905–06 (5th Cir.1983), *cert.*

ing and reasoning of two Second Circuit opinions defining "package" under COGSA, both of which referred to the shipping documents and other evidence of the intention of the parties. *Leather's Best, Inc. v. SS MORMACLYNX,* 451 F.2d 800, 815 (2nd Cir.1971); *Mitsui & Co., Ltd. v. American Export Lines,* 636 F.2d 807, 822–23 (2nd Cir.1981).

5. There can be little doubt that the Second Circuit would conclude that the lifts in the instant case were "packages." *Mitsui, supra,* 636 F.2d at 823 ("If the ingots had in fact been bundled, each bundle would have been a package.").

*denied* —— U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89; *Brazosport Towing Co., Inc. v. Donjon Marine Co., Inc.*, 556 F.Supp. 640, 644 S.D.Tex. 1983). It is therefore ORDERED that the motion to amend judgment to exclude the award of attorney's fees is hereby GRANTED.

Plaintiff's motion to dismiss with prejudice and for relief from judgment, pursuant to Rules 41(a)(2) and 60(b)(5), FED.R. CIV.P. is hereby DENIED.