**INTERNATIONAL ADJUSTERS, INC. as subrogee of Nissin International Transport USA, Inc., Plaintiff,**

v.

**KOREAN WONIS–SON, Korea Shipping Corporation, Goloh Distributing Service, Inc., Soo Line Railroad Co., Santa Fe Southern Pacific Railroad Co., Cosmopolitan Express, Inc., and Trader Pacific International, Ltd., Defendants.**

**No. 87 C 352.**

United States District Court,
N.D. Illinois, E.D.

March 21, 1988.

384

Joseph Romito, Leahy & Eisenberg, Ltd., Chicago, Ill., for plaintiff.

Edward R. Petkevis, Snyder & Gerard, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendants were hired to transport 40 cartons of variable resistors and 11 other cases and cartons, all placed in one large sealed container, from Yokohama, Japan, to Chicago, Illinois. Although the bill of lading indicates that the cartons and cases were sealed in the large container when received by the carrier, it is not clear from the facts which party provided the container. The complaint alleges that the value of the damaged resistors was $25,000, although no agreed valuation of the goods was stated on the bill of lading. Defendants move for partial summary judgment claiming that plaintiff's damages are limited to $500 pursuant to the terms of the bill of lading and the limitation of damages provided in the Carriage of Goods by Sea Act ("COGSA" or "the Act"), 46 U.S.C. 1304(5).

## DISCUSSION

Section 1304(5) of COGSA limits to $500 the liability that carriers may incur for loss or damage to each package they transport, unless the shipper declares the precise value of the package on the bill of lading.[1]

This section of the Act, and its application, have been a source of confusion for the courts since its enactment in 1936. Neither the Supreme Court nor the Seventh Circuit has construed the definition of the term "package" in light of recent advances in shipping technology. Thus, we turn to the decisions of the other courts of appeals, and the history of the Act, for assistance in interpreting COGSA and applying it here.

There are two policies behind § 1304(5). The first of these was explained in *General Motors Corporation v. Moore McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.1971). *General Motors* involved a shipper who sought to recover $60,000 from a carrier for damage to an electric generator when the generator was dropped into the sea while being unloaded from the carrier's vessel. The court in that case held that the guiding policy of the Act was "to limit liability of common carriers for damage to cargo where the value of the cargo is not known to the carrier." *Id.* at 26. Using this rationale, the court concluded that the generator was a "package" for purposes of the Act and plaintiff's damages were limited to $500.

The second policy behind § 1304(5) was described by the court in *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2d

---

1. The section provides in relevant part:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature or value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This decla-

ration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C. § 1304(5).

Cir.1971), where a shipper sought to recover $155,192 for the loss of 99 bales of leather that had been placed in a large container similar in size to the one at issue here. The court permitted the plaintiff to recover $500 per bale, concluding that

> we cannot escape the belief that the purpose of § 4(5) of COGSA [46 U.S.C. § 1304(5)] was to set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the carrier caused them to be "contained."

*Id.* at 815.

Defendants contend that it was the intent of Congress to protect the shipping industry from hidden liability. While this position is not without merit, it appears that in enacting the legislation Congress intended to address both the concerns of the shipping industry *and* the concerns of shippers. At the core of this problem is the fact that COGSA was enacted in 1936. As the court stated in *Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft*, 375 F.2d 943, 945 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967), "[f]ew, if any, in 1936 could have foreseen the change in the optimum size of shipping units that has arisen as the result of technology advances in the transportation industry."

Defendants urge the court to follow the COGSA policy as described in *General Motors*, and hold that the large container in which plaintiff's cartons and cases were placed is one "package" for purposes of § 1304(5).[2] Defendants claim that on the bill of lading plaintiff designated the container a "package." The bill of lading, however, is ambiguous and does not settle the issue of whether the one container or the numerous cartons are properly considered "packages." Under "TOTAL NO. OF Packages" the entry is "ONE (1) CONTAINER ONLY." Under "NO. OF COUNT OR PKGS. OTHER" the entry is "1 CONTAINER," "DESCRIPTION OF PACKAGES (9 CASES & 42 CARTONS)." By listing the cases and cartons plaintiff informed defendants that the shipment involved two levels of packaging and did not contractually agree that one of these levels would control the shipment.

Recently, various courts of appeals have adopted the rationale articulated in the *Leather's Best* line of cases and have interpreted § 1304(5) as setting a reasonable minimum level of recovery for shippers (and, certainly, restricting recovery to $500 per container effectively means no recovery at all). *See Hayes–Leger Associates v. M/V Oriental Knight*, 765 F.2d 1076 (11th Cir.1985); *Allstate Insurance Co. v. Inversiones Navieras Imparca, C.A.*, 646 F.2d 169 (5th Cir.1981); *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807 (2d Cir.1981). These courts have awarded damages far exceeding $500 for boxes and cartons placed in one large container that have been damaged in transport. *E.g., Allstate*, 646 F.2d at 173 (awarding $35,166 for damage to twenty cartons of electric goods placed in one container). The Brussels Protocol of 1968[3] also adopted this

**2.** Defendants cite two additional cases with holdings similar to that in *General Motors, Aluminios Pozuelo, Ltd. v. S.S. Navigator*, 407 F.2d 152 (2d Cir.1968) and *Island Yachts v. Federal Pacific Lakes Line*, 345 F.Supp. 889 (N.D.Ill. 1971), to support their position. These cases are of limited guidance here, however, since all three involved damage to *one* object, however large, and the respective plaintiffs were faced with the unenviable task of arguing that, due simply to their size, the single damaged objects were not "packages" or "customary freight units." In contrast, the container here held at least 51 separate objects—42 cartons and 9 cases, as marked on the bill of lading—and it is

this fact, and not the fact that the container holding these items was large, which forms the basis of plaintiff's argument that more than one package was damaged.

**3.** The Hague Rules of 1921 became the basis for the Brussels Convention, which was ratified by the United States in 1936, and then modified by the Brussels Protocol of 1968. *See Mitsui*, 636 F.2d at 815, 820 & nn. 5, 8. The Hague Rules constituted the first international effort to set a minimum level of liability for carrier-caused damage to cargo and the need for such a level was underscored during the congressional hearings on the Rules. *See* Carriage of Goods by

approach, specifically stating that the number of packages or units shall refer to the number of packages or units held in a larger container or pallet. Protocol to Amend the International Conventions for the Unification of Certain Rules of Law Relating to Bills of Lading, Feb. 23, 1968, *reprinted in* 6 Cohen, *Benedict on Admiralty*, Doc. 1–2 (1987). While the United States has not yet adopted the Brussels Protocol, the Protocol does not conflict with policies this country has endorsed and the court agrees with the *Mitsui* court that international uniformity is best achieved "by the approach ... that generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units are disclosed." 636 F.2d at 821.

In light of the technological advancement in the shipping industry since 1936, and due to the compelling need to provide shippers with a reasonable minimum level of recovery for carrier-caused damages to their goods and the desirability of promoting international uniformity, this court holds that "package," as it is used in § 1304(5), refers to the individual cartons and cases contained in a large container, and not the large container itself, when the number of individual cartons and cases is disclosed, at least in the absence of a clear and unambiguous agreement to treat the container as the package. *See Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1013 (2d Cir.1985). The motion for partial summary judgment is therefore denied. Plaintiff's maximum level of damages is limited to $500 per package.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is denied.

Sea Act: Hearings on S.1152 Before the Senate Comm. on Commerce, 74th Cong., 1st Sess. 492