**HAYES–LEGER ASSOCIATES, INC., d/b/a Mainly Baskets, Plaintiffs-Appellees,**

v.

**M/V ORIENTAL KNIGHT, et al., Defendants-Appellants.**

No. 84–8331.

United States Court of Appeals, Eleventh Circuit.

July 16, 1985.

Lamar C. Walter, Savannah, Ga., Vincent J. Barra, New York City, for defendants-appellants.

Lee Mundell, Savannah, Ga., for plaintiffs-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and PECK*, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This case presents the recurring issue of how to apply the limitation-of-liability clause contained in section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5), to goods shipped in containers. Section 4(5) limits a carrier's and vessel's liability for goods damaged in transportation to "$500 per package ..., or in case of goods not shipped in packages, per customary freight unit," unless the shipper explicitly declares a higher value. Here, five containers' worth of woven baskets and rattan goods were damaged while being carried aboard two vessels. The district court held that the goods were shipped in "packages," that none of the "packages" was worth more than $500, and that the defendant carrier and vessels thus were liable for the entire amount of damage sustained. On appeal, the defendants argue that the goods were not shipped in "packages," that the "customary freight unit" for such goods is the container itself, and that therefore the award of damages should have been limited to $500 per container, or $2,500. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Hayes-Leger Associates, Inc. ("Hayes-Leger"), d/b/a Mainly Baskets, was the consignee of five containers' worth of woven baskets and rattan goods shipped from the Philippines in July, 1981, aboard the M/V Oriental Knight and the M/V Pacific Dispatcher. Hayes-Leger opened

---

* Honorable John W. Peck, U.S. Senior Circuit Judge for the Sixth Circuit, sitting by designation.

the sealed containers upon their delivery, only to discover that the goods had been severely damaged. Testing revealed that the damage had been caused by salt water entering each of the containers through holes or other defects.

Hayes-Leger commenced five separate actions in federal district court against the carrier, the vessels, the shipper, and various charterers, managers, and agents for the cargo. The five cases were consolidated and tried before the court. At trial, Hayes-Leger presented evidence that (1) the bills of lading under which the goods were shipped were "clean" and contained no exceptions as to the goods or the containers, (2) the containers were defective upon receipt, (3) when the containers were opened, the goods were discovered to be damaged, (4) the goods were damaged by salt water, (5) Hayes-Leger's vice president previously had observed the loading of similar goods by the supplier in the Philippines, and (6) in nine years of dealing with the same supplier, Hayes-Leger had never received damaged goods such as those in the instant case. The defendants presented no evidence.

The district court ruled that Hayes-Leger had made out a *prima facie* case of liability under COGSA, 46 U.S.C. §§ 1300–1315, and *Terman Foods, Inc. v. Omega Lines,* 707 F.2d 1225 (11th Cir.1983),[1] and that the defendants had failed to meet their corresponding burden of proof.[2] The court therefore held the defendants liable for the damage to the goods. The court also found that the total amount of damage was $29,121.91,[3] and that prejudgment interest at the rate of 14% was appropriate.[4]

Finally, the court rejected the defendants' argument that section 4(5) of COGSA, 46 U.S.C. § 1304(5), limited their liability. The court adopted the Second Circuit's definition of a COGSA "package": "[A] class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made, which facilitates handling but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo, Ltd. v. S.S. Navigator,* 407 F.2d 152, 155 (2d Cir.1968). Applying this definition to the facts of the case before it, the court found that:

> the goods in question were prepared for shipping in each case in the manner customarily used for these types of goods. Specifically, the larger pieces of furniture were tied together in pairs, their arms and legs wrapped in paper, and separated from other items with cardboard; the trays were stacked and tied together as were the magazine racks and woven wreaths; the basket sets or indi-

---

1. Under the Carriage of Goods by Sea Act ..., the plaintiff establishes a prima facie case by proving the carrier received the cargo in good condition but unloaded it in a damaged condition at its destination.... A clean bill of lading is prima facie evidence that the carrier received the goods it describes.... It creates a rebuttable presumption the goods were delivered to the carrier in good condition and thus satisfies that element of the plaintiff's prima facie case.
*Id.* at 1227 (citations omitted).

2. Once the [plaintiff] presents a prima facie case, the burden shifts to the carrier to prove either that it exercised due diligence to prevent the damage by properly handling, stowing, and caring for the cargo in a seaworthy ship, 46 U.S.C.A. §§ 1303(1) and (2), or that the harm resulted from one of the excepted causes listed in 46 U.S.C.A. § 1304(2).... Only if the carrier is able to rebut the [plaintiff's] prima facie case by proving that it falls within one of the exceptions does the burden

of proof then shift back to the [plaintiff] to show the carrier's negligence was, at the least, a concurrent cause of the loss.
*Id.* at 1227 (citations omitted).

3. The damage to each shipment was as follows:
Shipment #1: 223 chairs damaged but recouped; 26 chairs destroyed; total loss $2,094.47
Shipment #2: 228 baskets damaged but recouped; 247 baskets destroyed; total loss $3,165.33
Shipment #3: 553 baskets destroyed; total loss $8,006.42
Shipment #4: 55 pieces of furniture damaged but recouped; 638 baskets destroyed; total loss $7,332.47
Shipment #5: 643 wreaths and 200 baskets destroyed; total loss $8,523.22

4. The interest, computed from the date of arrival of each container through the date of judgment, totalled $10,162.53.

vidual baskets of the same size not shipped in sets were pre-grouped and tied together with string, rattan or plastic and then stacked inside the containers in groups, usually in groups or [sic] two to five; and the decorative ducks and chickens and other miscellaneous items were individually wrapped or boxed. Virtually every item or piece was prepared for shipment in some fashion.

The court held that the goods were shipped in "packages," and that the applicable COGSA liability limitation was "$500 per package." Because the court also found that none of the "packages" in the containers was worth more than $500, judgment was entered in favor of Hayes-Leger, and against the defendants, in the amount of $39,284.44, including prejudgment interest, plus costs.

## II. DISCUSSION

The sole issue on appeal is whether the district court failed to properly apply section 4(5) of COGSA, 46 U.S.C. § 1304(5).[5] The defendants contend that the goods were not shipped in "packages," and that the applicable COGSA liability limitation should have been $500 "per customary freight unit." According to the defendants, the "customary freight unit" for such goods is the container itself, and the award of damages therefore should have been limited to $500 per container, or $2,500.

As noted by the court below, the term "package" as used in section 4(5) has no legislatively supplied definition. Rather, the task of defining and applying the term has fallen to the courts. The advent of containerized shipping has exacerbated this problem, requiring the courts to resolve such issues as whether a container itself may constitute a COGSA "package," and whether and to what extent various kinds of goods placed within a container constitute separate "packages."

In *Allstate Insurance Co. v. Inversiones Navieras Imparca, C.A.*, 646 F.2d 169 (5th Cir. Unit B 1981),[6] this circuit's predecessor discussed the application of section 4(5) to goods shipped in containers. There, the goods consisted of 100 stereo receivers, each packed in an individual carton, and several hundred digital clock radios, packed in 241 cartons with an average of six radios in each carton. The bill of lading described the cargo as "One 20' Ft. Container With 341 Cartons," and "One 20' Container said to contain electronic equipment radio apparatus." All of the cartons were missing upon arrival. The district court held that the container itself was the "package" for purposes of COGSA, and limited recovery to $500.

On appeal, the former Fifth Circuit reversed. The court adopted the view of the Second Circuit, which previously had held:

> [W]hile ... there might be some instances where a container might be the package, e.g., when the shipping documents ... gave the carrier no information as to the contents, ... at least when what would ordinarily be considered packages are shipped in a container supplied by the carrier and the number of such units is disclosed in the shipping documents, each of those units and not the container constitutes the "package" referred to in § 4(5).

*Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, 817 (2d Cir.1981). The former Fifth Circuit concluded that, because the number of packages within the container had been disclosed to the carrier

---

**5.** 46 U.S.C. § 1304(5) provides, in pertinent part:

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declara-

tion, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

**6.** The *Allstate* decision was rendered on May 26, 1981. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

in the bill of lading, "each package or unit within the container constitutes one 'package' for purposes of COGSA's $500 limitation of liability." *Allstate*, 646 F.2d at 172–73.

■ The *Allstate* rule, then, is that "if a shipper places its packages of goods in a container furnished by the carrier and discloses the number of packages in the container to the carrier in the bill of lading or otherwise, each package or unit within the container constitutes one package for purposes of COGSA's five hundred dollar limitation of liability." *Vegas v. Compania Anonima Venezolana De Navegacion*, 720 F.2d 629, 630 (11th Cir.1983). But what if the bill of lading fails to disclose to the carrier the number of packages in the container? The Second Circuit recently faced this problem in *Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam"*, 759 F.2d 1006 (2d Cir.1985). There, the court identified four basic principles for applying section 4(5) to containerized shipments. First, "the touchstone of our analysis should be the contractual agreement between the parties, as set forth in the bill of lading." *Id.* at 1012. Second, the term "package" means "the result of some 'preparation [of the cargo item] for transportation ... which facilitates handling but which does not necessarily conceal or completely enclose the goods.' " *Id.* (quoting *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir.1968)). Third, since a container is functionally part of the vessel, a container cannot be a COGSA "package" absent "a clear agreement between the parties to that effect, [and] at least so long as 'its contents and the number of packages or units are disclosed.' " *Id.* at 1013 (quoting *Mitsui & Co., Ltd. v. American Export Lines, Inc.*, 636 F.2d 807, 821 (2d Cir.1981)). Fourth, and finally,

"absent an agreement in the bill of lading as to packaging of the cargo, goods placed in containers and described as not separately packaged will be classified as 'goods not shipped in packages.' " *Id.*

The net effect of these principles can be summarized in the following two rules: (1) when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4(5) applies to those packages; but (2) when a bill of lading lists the number of containers as the number of packages, and fails to disclose the number of COGSA packages within each container, the liability limitation of section 4(5) applies to the containers themselves. *See id.* at 1013–16. Recognizing that the second rule might be considered a departure from prior law, the Second Circuit applied it prospectively only. For bills of lading prepared prior to the date of the *Binladen BSB Landscaping* decision, the court held that the "goods not shipped in packages" liability limitation would apply to such situations. *See id.* at 1016.

In our view, these two rules represent a reasonable method for applying section 4(5) to the developing area of containerized shipping. As the Second Circuit noted, the rules comport with the 1968 Brussels Protocol[7] and provide much-needed certainty. *See id.* at 1013. Uniformity is also an important consideration, since vessels often travel between different jurisdictions. We therefore adopt the rules announced by the Second Circuit in *Binladen BSB Landscaping*. Like the Second Circuit, however, we apply the second rule, under which containers may be treated as COGSA "packages" if the bills of lading so provide, prospectively only. For bills of lading prepared prior to the date of this decision, we

---

7. The 1968 Brussels Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to BILLS OF LADING, which has been adopted by some 17 countries, provides, in pertinent part:

Where a container, pallet or similar article of transport is used to consolidate goods, the number of packages or units enumerated in the bill of lading as packed in such article of

transport shall be deemed the number of packages or units for the purpose of this paragraph as far as these packages or units are concerned. Except as aforesaid such article of transport shall be considered the package or unit.

*Id.* at Article 2, paragraph (c); *see* 6 M. Cohen, Benedict on Admiralty, Document No. 1–2, at page 1–26 (7th ed. 1984).

will apply the "goods not shipped in packages" limitation to such situations.

■ Turning to the instant case, we begin by examining the five relevant bills of lading. The first bill of lading, dated June 30, 1981, listed the number of packages as "TWO THOUSAND SIX HUNDRED FORTY ONE PCS. ONLY." The goods were described as "2,641 PCS. WOVEN BASKETS AND RATTAN FURNITURES." The second bill of lading, dated July 20, 1981, listed the number of packages as "ONE CONTAINER ONLY." The goods were described as "1 CONTAINER SAID TO CONTAIN: 3,542 PCS. WOVEN BASKETS AND RATTAN FURNITURES." The other three bills of lading contained listings and descriptions identical to those in the first bill of lading, except for the numbers.[8]

The second bill of lading, dated July 20, 1981, is governed by the second *Binladen BSB Landscaping* rule. Because the bill of lading listed "ONE CONTAINER ONLY" as the number of packages, and did not otherwise disclose to the carrier the number of packages within the container,[9] the shipment must be treated as one of "goods not shipped in packages." We

therefore reverse the district court's award of full damages for the goods shipped under the second bill of lading. Because the district court did not determine the "customary freight unit" for the goods,[10] we remand for such a determination and the entry of a revised damage award.

The remaining four bills of lading pose a different problem. These four bills of lading purported to treat each piece of woven baskets and rattan furniture as a separate COGSA "package." The district court found, however, that each piece was *not* a separate "package," but rather that the pieces were grouped together into "packages," each "package" containing anywhere from one to several pieces.[11] In short, we are faced with four bills of lading that purported to disclose to the carrier the number of packages in each container, but did so inaccurately. *Cf. Binladen BSB Landscaping,* 759 F.2d at 1014 n. 7 (reserving question "whether our conceptual definition of a package may impose limits on the types of items that parties may agree to treat as packages").

In resolving this problem, we are influenced by two considerations. First, there are important reasons for requiring the

---

**8.** The third bill of lading, dated July 26, 1981, listed the number of packages as "THREE THOUSAND FORTY FIVE PCS. ONLY," and described the goods as "3,045 PCS. WOVEN BASKETS AND RATTAN FURNITURES." The fourth bill of lading, dated August 7, 1981, listed the number of packages as "TWO THOUSAND FOUR HUNDRED THIRTY ONE PCS. ONLY," and described the goods as "2,431 PCS. WOVEN BASKETS AND RATTAN FURNITURES." The fifth bill of lading, dated August 16, 1981, listed the number of packages as "TWO THOUSAND ONE HUNDRED FORTYSIX PCS. ONLY," and described the goods as "2,146 PCS. WOVEN BASKETS AND RATTAN FURNITURES."

**9.** The bill of lading described the goods as "3,542 PCS." of baskets and furniture. This description was insufficient to indicate to the carrier that the goods were "packaged." As the Second Circuit explained in *Binladen BSB Landscaping,* if the shipper intends to rely on the description portion of the bill of lading to disclose to the carrier the number of COGSA "packages" in a container, that description must indicate "the number of items qualifying as packages (i.e., connoting preparation in some way

for transport), such as 'bundles,' 'cartons,' or the like." *Id.* at 1013–14.

**10.** Because the court below determined that the goods were shipped in "packages," it never reached the defendants' argument that the "customary freight unit" is the container itself. The "customary freight unit" is a question of fact that varies from contract to contract, *see Croft & Scully Co. v. M/V Skulptor Vuchetich,* 664 F.2d 1277, 1282 (5th Cir.1982), and the resolution of such purely factual issues is not the proper role of an appellate court. *See Binladen BSB Landscaping,* 759 F.2d at 1016 (citing *Pullman-Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982), and remanding for determination of "customary freight unit" by district court).

**11.** The court found that the larger pieces of furniture were "tied together in pairs," the trays, magazine racks, and wreaths were "stacked and tied together," the baskets were "pre-grouped and tied together ... and then stacked inside the containers in groups, usually in groups or [sic] two to five," and the decorative ducks and chickens were "individually wrapped or boxed."

shipper to disclose, fully and accurately, the number of packages in a container. As the Second Circuit noted in *Binladen BSB Landscaping:*

> The ability of the shipper and carrier to contract fairly for the division of liability between themselves depends in turn on disclosure of the relevant information about the packaging of the goods being shipped. The shipper retains the power to protect itself by stating in plain terms on the bill of lading the number of COGSA packages being shipped. Any other interpretation would prevent the carrier from accurately assessing its potential liability at the time it contracts to transport the goods.

*Id.* at 1016. Inaccurate disclosure, like non-disclosure, may expose a carrier to unforeseen liability.

■ On the other hand, whether inaccurate disclosure will lead to unforeseen carrier's liability depends on whether the shipper has *overstated* or *understated* the number of COGSA packages in the container. Where, as in *Binladen BSB Landscaping,*[12] the shipper has *understated* the number of packages, the carrier faces "liability that might vary by orders of magnitude depending on the exact packaging of goods inside a sealed container, even though this information was not revealed to it by the bill of lading." *Id.* at 1015. The best approach in such a case is to limit the carrier's liability based on the number of packages stated in the bill of lading. *See Nemeth v. General S.S. Corp., Ltd.,* 694 F.2d 609, 613–14 (9th Cir.1982).

■ Where, as here, however, the shipper has *overstated* the number of COGSA packages, the carrier is *not* exposed to unforeseen liability. Rather, because the carrier must assume that a sealed container holds as many packages as the shipper claims it does, the carrier actually is exposed to *less* liability than anticipated. Although the carrier certainly cannot be held liable based on the number of packages stated in the bill of lading, it is reasonable to apply the "$500 per package" liability limitation to the actual number of packages in the container. We therefore hold that, where the shipper *overstates* the number of packages in a container, the COGSA liability limitation should be applied to the actual number of packages in the container.

In the instant case, the district court properly applied the COGSA liability limitation to the actual number of packages in the container. Furthermore, we agree with the court below that the proper definition of a COGSA "package" is the one stated in the *Aluminios Pozuelo, Ltd.* case. *See id.* at 155. Our final inquiry is whether the court correctly determined that the goods were shipped in "packages." We conclude that the court did not err in making this determination.[13] As the court noted, all of the goods were "prepared for shipment in the normal manner in which goods of this kind are prepared," and "were in fact wrapped, tied, or bound together in distinct groups and packed inside the containers." Such preparation satisfied the *Aluminios Pozuelo, Ltd.* standard. We thus hold that the district court properly awarded full damages for the goods shipped under the first, third, fourth, and fifth bills of lading.

---

**12.** In *Binladen BSB Landscaping,* the bills of lading listed the number of containers as the number of packages. In reality, each container contained thousands of individually potted plants. The Second Circuit held:

> When a bill of lading specifies the number of containers but does not reveal the number of packages inside, the only certain figure known to both parties is the number of containers shipped. In such event the carrier cannot be charged with knowledge of whether the container is filled with packages, with unpackaged goods, or with some combina-

tion. The carrier should not be expected to assume the risk inherent in such uncertainty....

*Id.* at 1015.

**13.** Hayes-Leger contends that the district court's finding must be upheld unless "clearly erroneous," *see* Fed.R.Civ.P. 52(a), while the defendants argue for plenary review. Because we would uphold the district court's finding under either standard of review, we need not resolve this dispute.

### III. CONCLUSION

In light of the foregoing discussion, we hereby AFFIRM the judgment of the court below in part, but REVERSE the award of full damages for the goods shipped under the second bill of lading and REMAND for further proceedings consistent with this opinion.