FISHMAN & TOBIN, INC., individually and for the use and benefit of the Insurance Company of North America, MacClenny Products, Inc., individually and for the use and benefit of the Insurance Company of North America, et al., Plaintiffs-Appellants,

v.

TROPICAL SHIPPING & CONSTRUCTION CO., LTD., Defendant-Appellee.

No. 99-4375.

United States Court of Appeals,

Eleventh Circuit.

Jan. 31, 2001.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-08747-CV-DLG), Donald L. Graham, Judge.

Before BARKETT and WILSON, Circuit Judges, and DOWD[*], District Judge.

WILSON, Circuit Judge:

Fishman & Tobin ("Fishman") and MacClenny Products ("MacClenny"), two manufacturers that ship clothing from the Caribbean to the United States, appeal the amount of judgment awarded to them when a carrier lost their cargo at sea. In resolving their dispute, this Court for the fourth time enters the murky waters of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 *et seq.* More specifically, we endeavor to provide clarity to the reoccurring issue of what constitutes a "package" under section 1304(5) of COGSA, since the term is not defined in the statute. After thorough review of the record and the proceedings below, we now affirm the district court's ruling on the matter.

BACKGROUND

Fishman and MacClenny are two out of a number of American clothing manufacturers who have their clothing assembled in Santiago, Dominican Republic and shipped to the United States under the Caribbean Basin Initiative program.

Fishman imports children's clothing. The company ships its product in a unit referred to in the industry as a "big pack." A "big pack," which is akin to a pallet, has 4 × 4 ft. dimensions, is slotted at the bottom so that it can be picked up by a forklift, and is partially enclosed in corrugated cardboard with a base and cover made of plastic. Inside these containers are bundles of boys' pants and the like which are wrapped in paper and sorted by style.

[*]Honorable David D. Dowd, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation.

MacClenny is an importer of men's suits and jackets. For the past ten years, MacClenny sent all of its shipments with the same carrier, Tropical Shipping ("Tropical"), until the incident culminating in this suit. On a weekly basis, MacClenny routed four ocean containers of cloth, buttons, zippers, labels, hangers, and plastic bags to Santiago to be assembled. Every week, between seven and twelve containers of assembled men's jackets were returned to Florida. The assembled suit jackets were shipped in extra-tall containers to which structural beams are attached to place these "garment-on-hanger packages." Nylon ropes were hung from these beams and knotted at certain intervals so that the hangers held during shipping. Each garment-on-hanger container could hold between 4500 and 5500 hangers. Tropical regularly sent its employees to MacClenny's local partner, X-Cell Fashions, to have these specially-designed containers cleaned, lining installed, and ropes checked so that the newly pressed suits enclosed in plastic bags did not become wrinkled or soiled during transport.

Both shippers regularly dealt with Tropical Shipping to transport their clothing. A truck owned by Tropical would pick up the clothing at the shippers' respective warehouses along with a cargo manifest and drive it to port. Once the cargo arrived at the port, it would be transferred to the ship's containers and a bill of lading would be prepared and sent back to the warehouses in accordance with industry custom. Typically, the bills of lading arrived after the ships set sail.

During one such routine voyage, Tropical Shipping had a number of containers fall overboard due to improper storage on the vessel. Tropical admits its liability and asserts that section 1304(5) of COGSA limits its liability to $500.00 per package lost. The parties disagree, however, on the application of the COGSA definition of package to the units that were shipped.[1]

The parties brought their disagreement before the district court on competing motions for summary judgment. After reviewing the facts before it, the district court decided in favor of Tropical, concluding that the Fishman package was a big pack and fair recovery was the amount of $19,500 or 39 "big pack" packages at $500 per package. MacClenny would receive only $500 in compensation for the loss of only one container.

---

[1]The Carriage of Goods by Sea Act, 46 U.S.C. § 1304(5), provides in part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

Both Fishman and MacClenny now appeal that ruling.

## DISCUSSION

The main point of contention between the two sides is how to apply the COGSA definition of package to the units shipped. We previously adopted the Second Circuit's definition of "package". *See Hayes-Leger Assocs., Inc. v. M/V Oriental Knight,* 765 F.2d 1076, 1082 (11th Cir.1985). A package is "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo, Ltd. v. S.S. Navigator,* 407 F.2d 152, 155 (2d Cir.1968). There are four basic principles identified in *Hayes-Leger* for applying COGSA's section 1304(5) to containerized shipments: (1) the contractual agreement between the parties as set forth in the bill of lading; (2) the term "package" means the result of some preparation for transportation "which facilitates handling but which does not necessarily conceal or completely enclose the goods;" (3) a container cannot be a COGSA package absent "a clear agreement between the parties to that effect, [and] at least so long as its contents and the number of packages or units are disclosed;" and (4) "absent an agreement in the bill of lading as to packaging of the cargo, goods placed in containers and described as not separately packaged will be classified as goods not shipped in packages." *Hayes-Leger,* 765 F.2d at 1080 (citation omitted) (quotations omitted).[2] We now attempt to apply this less than transparent definition to each of the cases at hand.

### *Fishman & Tobin*

### A. The Fishman Dozen

Fishman suggests that the smaller bundles of its pants, referred to as "dozens", should be considered packages rather than the "big packs" used to store those dozens before they go into the containers.[3] *See Mitsui & Co., Ltd. v. American Export Lines, Inc.,* 636 F.2d 807, 818 (2d Cir.1981) ("cartons, crates and other units

---

[2]*Hayes-Leger* further summarized these four points into the following two rules:

> (1) when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4(5) applies to those packages; but

> (2) when a bill of lading lists the number of containers as the number of packages, and fails to disclose the number of COGSA packages within each container, the liability limitation of section 4(5) applies to the containers themselves.

765 F.2d at 1080.

[3]Both sides agree that the term "big pack" is a customary unit of packaging in the industry.

that were treated as COGSA packages when they were shipped breakbulk should ordinarily continue to be so treated when they are shipped in containers"); *Matsushita Elec. Corp. v. S.S. Aegis Spirit,* 414 F.Supp. 894, 907 (W.D.Wash.1976) ("if the individual crates or cartons prepared by the shipper and containing his goods can rightly be considered 'packages' standing by themselves, they do not suddenly loose that character upon being stowed in a carrier's container").

Any grouping demonstrating some preparation may be considered a package. Yet, it is clear that the number of packages should be fully and accurately disclosed and easily discernable by the carrier, otherwise carriers will suffer unforeseen liability. *See Hayes-Leger,* 765 F.2d at 1082; *Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam",* 759 F.2d 1006, 1012-14 (2d Cir.1985). As a result, "the touchstone of our analysis" is the contractual agreement between the parties as set forth in the bill of lading. *See Hayes-Leger,* 765 F.2d at 1080 ("when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4(5) applies to those packages"). The bill of lading made out by Tropical states the following:

| marks & numbers | quantity | description of goods | gross weight |
|---|---|---|---|
| As Addr. | 1 × 40' | Stc. 39 Big Pack Containing 27,908 units boy's pants | 2 4 2 0 7 |
| As Addr. | 1 × 40' | Stc. 17 Big Pack Containing 13,719 Units Boy's Pants | 1 0 5 5 2 |

The customs declaration form made out by Fishman includes all the same information but also indicates the value of the items being shipped. Neither form refers to the number of dozens of pants being shipped.

Fishman contends that the cargo manifest and reembarque[4] are the relevant documents to be examined as they were prepared by Fishman and were simply miscopied from Fishman's form to the bill of lading. *See In re Belize Trading, Ltd. v. Sun Ins. Co. of New York,* 993 F.2d 790, 792 (11th Cir.1993) (holding that when the bill of lading and the shipping documents do not conform, the bill is construed as having reflected the number of packages designated in the shipping invoices and as such be in conformity with COGSA). In this

---

[4]The reembarque is another piece of customs documentation.

case, the reembarque states, although not clearly, that 2,325.08 dozens of pants are inside the relevant big packs.

| cantidad de bultos | clases de bultos | detalles de las mercancias |
|---|---|---|
| quantity/number of packages | type of packages | description of goods[5] |
| 39       big pack | containing:  2,325.08childrens' pants[6] | |

As both Tropical's interpretation of the bill of lading and the reembarque agree as to the type and number of packages shipped, there is no need to look further.  Recovery will be based on the thirty-nine big packs indicated.

Even without such clarification, Fishman would be hard pressed to support their claim that "dozens" are the relevant unit of measurement.  By its own admission, Fishman acknowledges that "dozens" as a unit of measurement and packaging in this case could refer to any number of pants from one to twelve.  The designation really referred to the total number of pants in the container rather than some common form of packaging that facilitates transportation.  As a result, not only is a Fishman "dozen" an inaccurate unit of measurement, it is one not clearly denoted on the cargo manifest, customs declaration, or bill of lading.  As such, the Fishman dozen cannot be used as the measure of packaging referred to by COGSA.  Accordingly, we find nothing wrong with the district court's conclusion that the "big packs" as opposed to the "dozens" were the appropriate unit of measurement.

Based on this analysis, Fishman received a fair settlement from the district court.  The cargo manifest and the bill of lading each indicate 39 big packs and state nothing about the smaller dozens.  The recovery it received of $19,500, or $500 per big pack, is also slightly more than the declared value of the product

---

[5]This is a loose translation of the reembarque which is written in Spanish.

[6]The invoice and other reembarque forms are slightly different in that they state "DZ" after listing the number of pants being shipped.  ("DZ"utilized as an abbreviation for dozen).

 The cargo declaration contains a slightly different description of the goods.  It states "1 × 40' STC. 39 big pack containing 27,908 units boy's pants," which is roughly the number of dozens multiplied by 12.

(although significantly less than the insured value).[7]

## B. Collateral Estoppel

Fishman also argues that it is entitled through the doctrine of collateral estoppel to benefit from the district court's favorable ruling in a related case where the relevant "package" was defined as each "dozen" of pants. *See Ins. Co. of N. Am. v. Tropical Shipping & Constr. Co., Ltd.,* No. 97-1782-CIV-King, --- F.Supp.2d ---- (S.D. Fla. June 2, 1998)(unpublished). Collateral estoppel forecloses re-litigation of an issue of fact or law where an identical issue has been fully litigated and decided in a prior suit. *See Grosz v. City of Miami Beach, Fla.,* 82 F.3d 1005, 1006 (11th Cir.1996).

In the related case, both the cargo manifest and the bill of lading clearly indicated the "dozens" of pants being shipped. *See Ins. Co.,* No. 97-1782-CIV-King. There was also evidence that the "dozen" referred to in that opinion was actually packaged units of twelve pair rather than the Fishman dozen at issue here. Thus, the carrier in that case was on notice that the dozens would constitute packages. *See Sony Magnetic Prods. Inc. v. Merivienti O/Y,* 863 F.2d 1537, 1542 n. 7 (11th Cir.1989). This is not the case with Fishman and Tropical, where Fishman gave Tropical no indication that the relevant unit in question would be a dozen.

Furthermore, Tropical rightly asserts that the cases are factually dissimilar and legally incomparable because there is no indication that the *Insurance Co.* district court considered all the relevant case law in the matter, i.e., *Hayes-Leger* and the Second Circuit case law adopted therein. As a result, we find that the cases are factually and legally distinct and that collateral estoppel does not apply.

## *MacClenny Products*

### A. Containerized Packaging

For MacClenny, the case is different. It argues that a single jacket packaged on a hanger and enclosed in a poly bag is understood in the industry to be the unit of packaging. Furthermore, uncontroverted

---

[7]Furthermore, if Fishman wanted greater insurance coverage on its clothing, it could have paid additional freight charges, thus opting out of COGSA coverage. *See Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co. Ltd.,* Case No. 96-8341-CIV-Ryskamp (S.D.Fla.1997); *New Hampshire Ins. Co. v. Seaboard Marine, Ltd.,* 1992 A.M.C. 279 (S.D.Fla.1992). Not paying the additional amount implies a conscious decision to adhere to COGSA's limited liability. In fact, both Fishman and MacClenny chose not to opt out of COGSA's limitation but instead transferred the risk of loss greater than the COGSA limitations from themselves to their insurer. *See Travelers Indem. Co. v. Vessel Sam Houston,* 26 F.3d 895, 900 (9th Cir.1994) ("[A] shipper who chooses to insure its cargo through an independent insurance company has made a conscious decision not to opt out of COGSA's liability limitation"). Fishman's reembarque form further supports this theory in that it declares the insurance value of the shipment as well as the value of the goods leaving port. As a result of the clear statements on the bill of lading and declaration forms and the fact that Fishman chose not to opt out of COGSA coverage, the district court's award to them of $19,500 stands.

evidence in the form of affidavits state that U.S. Customs compels the parties to specify the jackets as units, thus establishing each packaged jacket as a standard shipping unit. The cargo manifest given to Tropical Shipping indicates that 5000 units or packages are being shipped for a total value of $23,750. The bill of lading also corroborates this description.[8]

| Marks and Numbers | Quantity | Description of goods | Gross weight |
|---|---|---|---|
| As Addr. | 1 × 40' Stc. 5,000 Units | Men's Jackets | 7515 |

Tropical, nonetheless, offers two reasons why MacClenny should recover only $500 for a single container lost instead of the 5,000 units MacClenny claims. The first reason is that while most courts are reluctant to recognize containers as packages because it "is inconsistent with a congressional purpose of establishing a reasonable minimal level of liability," *Mitsui,* 636 F.2d at 820, containers will be treated as COGSA "packages" if the bill of lading so provides. *See Hayes-Leger,* 765 F.2d at 1080-81. Second, they argue that only the container size "1 × 40' " is listed in the quantity column and no other packaging measurement is indicated.

The world of cargo shipping has changed substantially since the implementation of COGSA in 1936. *See generally,* Joseph C. Sweeney, *The Prism of COGSA,* 30 J. Mar. L. & Com. 543 (1999); Howard M. McCormack, *Uniformity of Maritime Law, History, & Perspective from the U.S. Point of View,* 73 Tul. L. Rev. 1481 (1999); Schmeltzer & Peavy, *Prospects and Problems of the Container Revolution,* 1 J. Mar. L. & Com. 203 (1970). At the time of the law's enactment, Congress did not and could not foresee the advent of containerized shipping. *See Allstate Ins. Co. v. Inversiones Navieras Imparca, C.A.,* 646 F.2d 169, 170 (5th Cir. Unit B May 1981). While the practice of shipping goods in individualized containers has helped to prevent exposure of products to the elements, it has created infinite difficulties in applying COGSA to shipments that are lost at sea. Tropical correctly assesses our reluctance to hold that a container is a package, where more accurately it may be considered but "a modern substitute for the hold of the vessel." *Northeast*

---

[8]Additionally, over the years, Tropical has informed MacClenny when shipments did not conform to the number of units indicated in the bill of lading and that number was adjusted by the one or two units that the container fell short. Evidence of this course of dealing may very well establish that both parties understood each suit to be a COGSA unit. *See e.g., Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.,* 201 F.3d 1111, 1113-14 (9th Cir.2000).

*Marine Terminal Co. v. Caputo,* 432 U.S. 249, 270, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). In fact:

> [W]e cannot escape the belief that the purpose of § 4(5) of COGSA was to set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the carrier caused them to be "contained."

*Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 815 (2d Cir.1971) (holding that the 99 bales of leather inside a container constituted the relevant package for COGSA purposes); *see also Allstate,* 646 F.2d at 172-173 (cartons of electronic equipment); *Marcraft Clothes, Inc. v. M/V "Kurobe Maru",* 575 F.Supp. 239, 243 (S.D.N.Y.1983) (suits on hangers); *Inter-American Foods, Inc. v. Coordinated Caribbean Transport, Inc.,* 313 F.Supp. 1334, 1339 (S.D.Fla.1970) (cartons of frozen shrimp). Therefore, we approach any attempt to define a container as a COGSA package with great reluctance.

Moreover, our inquiry into the matter does not end where Tropical would like at a quick glance at the "number of packages" column on the bill of lading.[9] While the "number of packages" column is plainly our starting point in determining these issues, the analysis does not end there. *See Hayes-Leger,* 765 F.2d at 1081; *Seguros "Illimani" S.A. v. M/V Popi P,* 929 F.2d 89, 94 (2d Cir.1991). "[W]hen a bill of lading refers to both containers and other units susceptible of being COGSA packages, it is inherently ambiguous." *Monica Textile Corp. v. S.S. Tana,* 952 F.2d 636, 642 (2d Cir.1991); *Mitsui,* 636 F.2d at 822-23. Such ambiguity is normally resolved against the carrier absent evidence that both the shipper and carrier clearly and explicitly agreed to treat the container as a package.[10] There is no such explicit agreement here.

This Court has also stated that the limitation on recovery will not be followed where the carrier description is self-serving. *See Belize Trading,* 993 F.2d at 792. Similar to the present case, *Belize* involved a dispute in which the shipper indicated in the cargo manifest the number of packages it intended to declare per container and the carrier in writing the bill of lading ignored the delineation and simply wrote "1 container." The *Belize* court distinguished *Belize* from *Hayes-Leger* by stating that in *Hayes-Leger,* the parties agreed that the bill of lading would only indicate containers. *See id.* at 792 n. 6. There was no such

---

[9]As previously stated, where the bill of lading does not accurately reflect information provided by the shipper to the carrier, we look beyond it to the documents provided by the shipper. *See In re Belize Trading,* 993 F.2d at 792.

[10]The reason for such skepticism in approach, which many courts have implicitly recognized, is that a bill of lading is nothing more than a contract of adhesion, and rarely does a shipper intend to provide COGSA coverage to the container alone and not to some form of the goods stowed inside it. Allowing recovery for the container where no other explicit reference was made to packaging is simply a legal convenience to ensure a minimal level of recovery. *See Mitsui,* 636 F.2d at 816-17.

agreement here. In the bill of lading sent to MacClenny after the ship set sail, Tropical listed only the dimensions of the container in the quantity column.

In this case, while the dimensions of the container were indicated in the quantity column, the description states that "5000 units men's suits" are inside the container. MacClenny presented evidence that the description of 5000 units may be attributed to U.S. Customs rules and regulations and represents a kind of *de facto* shipping unit. MacClenny's reembarque contains roughly the same information as the bill of lading but the commercial invoice on the other hand clearly indicates that each jacket is a package.[11] This internal conflict between the documents written by MacClenny's agents further complicates the issue.

Despite the ambiguities and conflicts among the evidence presented at summary judgment, a review of both the customs declaration form and reembarque indicate that MacClenny of their own will stipulated under the number of packages column only one. The evidence presented in competing motions for summary judgment that each garment-on-hanger is a recognized shipping unit is inconclusive.[12] Furthermore, our precedent has clearly required that the number of packages that are declared must be indicated in the number/quantity of packages column on the bill of lading. *See Hayes-Leger,* 765 F.2d at 1081. Absent such an indication (and in light of the circumstances such as the present), the shipper's own documents as the next most reliable source of information should give some clear indication that more than one package is being shipped in order to claim multiple losses.

After more than ten years in the shipping business, MacClenny is hard pressed to argue that it did not understand the significance of correctly completing all the declaration forms and bills to COGSA recovery. In light of the fact that neither the bill of lading nor the reembarque or customs form offer any clear indication that each garment-on-hanger was the relevant unit of packaging being shipped and our precedent holding that such information need be provided, we affirm the district court's award of $500 for a single container

---

[11]A quick sampling of the commercial invoice reveals the following designations:

UNITS DESCRIPTION

| **Packages:** | **1** | **Men's Jackets** |
|---|---|---|
| 1,706 | | 50% wool 50% lambswool |
| 1,264 | | 74% polyester 21% wool 5% silk |

[12]MacClenny is also unable to argue that each unit is a "customary freight unit" as they are not "customarily used as the basis for the calculation of the freight rate to be charged." *Caterpillar Overseas S.A. v. Marine Transport, Inc.,* 900 F.2d 714, 722 (4th Cir.1990)

shipped.[13]

## B. Intra-Court Comity

Finally, appellants ask us to consider whether the district court erred in not applying intra-court comity and following the decisions of *Dorby Frocks,* No. 95-0331-CIV-LENARD. We will address this issue only briefly. We are aware of the need for consistency in the administration of the judicial process. The issue takes on greater saliency in cases such as this where an attempt is made not just to divine the thoughts of Congress but to create judicial precedent consistent with the opinions of this Circuit, the federal judiciary generally, and, as this is a matter of international convention, a result not entirely devoid of the awareness of the potential for international disparity.

Nonetheless, it should be noted that there is a paucity of case law dealing with intra-court comity. Courts follow the doctrine to provide a uniform interpretation of the law. *See United States v. Anaya,* 509 F.Supp. 289, 293 (S.D.Fla.1980), *aff'd sub nom United States v. Zayas-Morales,* 685 F.2d 1272 (11th Cir.1982). Unlike circuit court panels where one panel will not overrule another, *see Julius v. Johnson,* 755 F.2d 1403, 1404 (11th Cir.1985), district courts are not held to the same standard. *See Anaya,* 509 F.Supp. at 293 n. 2 (holding that even district court cases decided by panels of three have no precedential value). While the decisions of their fellow judges are persuasive, they are not binding authority. *See Aguirre v. United States,* 956 F.2d 1166 (9th Cir.1992) (unpublished); Stephen J. Powell, M. Linda Concannon, *Stare Decisis in the Court of International Trade: One Court or Many?,* 408 PLI/Comm 351, 358-361 (1987). As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges. Based on this, as well as the lack of precedent to conclude that intra-court comity applies between courts on the district court level, we find that this issue has no merit.[14]

## CONCLUSION

---

[13]This is not to say that there may never be a case where the conflict between the information provided in the quantity column and description column would lead to a different result. There was simply not enough evidence to support that conclusion in this case. It is also our hope that by providing a bright-line rule now, such conflicts may be avoided in the future and shippers and carriers alike will be on notice as to how to proceed.

[14]Appellants also raise the issue of *stare decisis.* We choose not to address that issue as it can only apply in situations where a court is bound by its own controlling decisions or that of courts to which it is obedient. *See Jaffree v. Wallace,* 705 F.2d 1526, 1532 (11th Cir.1983), *aff'd* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). In the case of the Southern District of Florida Court, the only courts it must be obedient to are this Circuit and the Supreme Court of the United States. *See id; Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 120 F.3d 1140, 1143 (11th Cir.1997).

After thorough review of the issues before us, we affirm the district court's ruling as to both Fishman & Tobin and MacClenny Products.

AFFIRMED.

_____

_____

_____

_____

_____